IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

CLAUDE EDWARD ISBELL )
) No. 1-12-0034
v. )
)
UNITED STATES OF AMERICA )

MEMORANDUM

Pursuant to the order entered March 13, 2013 (Docket Entry No. 22), and upon the parties' consent (Docket Entry No. 21), this case was referred to the Magistrate Judge to conduct any and all further proceedings, including entry of final judgment, as provided in 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules of Civil Procedure. A bench trial was conducted on September 16, 2013. In accord with Rule 52 of the Federal Rules of Civil Procedure, the Court makes the following findings of fact and conclusions of law.

## I. BACKGROUND

The plaintiff filed this action against the United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 et seq. ("FTCA"), seeking damages in the amount of $176,755.72 he sustained in a collision with a postal truck, called a Long Life Vehicle or "LLV," on September 26, 2009, in Hohenwald, Tennessee. The plaintiff alleged that Tonya Boyd, the postal worker, parked her LLV negligently and left it unattended on the local highway in violation of Tenn. Code Ann. § 55-8-158 and local traffic ordinances, that she failed to recognize the danger she created by parking within a lane used for merging onto the highway in light of the weather conditions and "objects preventing a clear view." See Docket Entry No. 33, at 2. As a result, the plaintiff maintains that he unavoidably collided with the LLV. The plaintiff seeks damages for his injuries, medical expenses, property damage, pain and suffering, loss of earnings and earning capacity, and loss of enjoyment of life. Docket Entry No. 39, at 2.

In contrast, the defendant contends that the plaintiff was negligent in failing to avoid the collision and that such negligence was the proximate cause of his injuries or, alternatively, the defendant contends that the plaintiff was comparatively at fault. It is the defendant's position that the plaintiff rear-ended the LLV that was parked against the curb and was clearly visible with its emergency lights flashing. The defendant maintains that the plaintiff proceeded in an "incautious manner" during a rainstorm without taking precautions considering the weather and his limited vision. See Docket Entry No. 43, at 3.

The plaintiff and his wife, Linda Isbell, and Tonya Boyd testified at the trial. The parties stipulated to the admission of 16 exhibits.

The parties filed post-trial proposed findings of fact and conclusions of law (Docket Entry Nos. 39 and 43), and the plaintiff filed objections and response to the defendant's proposed findings of fact and conclusions of law (Docket Entry No. 44). The defendant did not file or seek to file a reply to the plaintiff's response.

## II. FINDINGS OF FACT

1. The plaintiff was 64 years old at the time of the accident. He and his wife have lived in Hohenwald for over 20 years and he was familiar with the route he drove, having driven that stretch of the road several times a week.

2. The plaintiff had intended to go fishing with his son the morning of September 26, 2009, but, because it was raining, he and his son decided not to go fishing. Instead, the plaintiff, driving his Ford pickup truck and pulling his 17-foot fishing/ski boat on a trailer, left his son's home to return to his home. He was traveling west on Highway 20 (also known as 4th Avenue), at about 9:20 a.m., on September 26, 2009, when he drove onto a ramp and began to merge into Highway 48 (also known as Park Avenue) in a residential neighborhood in Hohenwald, Tennessee.

3. There is no yield or stop sign on the ramp and there is a right merge lane by which traffic merges with the one primary northbound lane of Highway 48.

4. There was a large magnolia tree on the property to the plaintiff's right as he entered the ramp. Prior to trial, the plaintiff contended that the tree obscured his view so that he had insufficient prior notice of the parked LLV to allow him to avoid colliding with the LLV.

5. The speed limit was 30 miles per hour. The plaintiff testified that he was driving 15-20 miles per hour. The plaintiff also testified that, despite his familiarity with the route, he had never seen a postal truck parked at the location of the accident nor did he have any reason to know that the LLV might be parked where it was.

6. It was raining heavily and the sky was overcast, thus limiting visibility at the time of the accident.

7. The plaintiff suffered a stroke in the summer of 2008. Although his vision in his right eye remained intact, as a result of the stroke, his vision in his left eye was extremely limited. In March of 2009, the plaintiff passed a physical exam and eye test to maintain his commercial driver's license.

8. On September 23, 2010, a year after the accident, Dr. Jeffrey D. Horn wrote to Dr. Veena Anand that the plaintiff "is a very active gentleman who still continues to drive his motorcycle and is noting that he is having more and more trouble seeing and his wife notes that he has trouble staying within his lane while driving." Exhibit 12, at Bate Stamp No. 00050. Although Ms. Isbell testified that her concern about his staying in his lane did not arise until 2010, the plaintiff himself testified that his vision had not gotten worse between the time of the accident and September of 2010.

9. Tonya Boyd was a six year employee of the postal service. She has primarily served as a substitute mail carrier on the city and rural postal routes. On September 26, 2000, she was acting within the scope and course of her employment and she was assigned to Hohenwald City Route 2, with at least 600 stops and about 350 "dismounts," which required her to leave her truck to deliver mail. Ms. Boyd did not have discretion to vary the location of her stops and dismounts since they were established by the Postmaster.

10. Ms. Boyd had parked her LLV parallel to the curb in the merge lane of Highway 48 with its wheels turned into the curb, and she activated the blinking strobe lights on the rear of the truck. She left the LLV unattended to deliver mail to the adjacent house.

11. There was a shoulder area for parallel parking approximately 270 feet away from the place of impact, which Ms. Boyd utilized for dismounting and delivering mail to multiple residences down the road.

12. The plaintiff testified that there were other vehicles in the primary northbound lane of Highway 48 that prevented him from changing lanes into that lane, and there is no reason to disbelieve that testimony. There was insufficient room for the plaintiff to have driven around the LLV while remaining in the merge lane.

13. Both the plaintiff and Ms. Boyd testified that the LLV could not have been seen from 200 or more feet away.

14. The plaintiff ran into the LLV. Specifically, the right front of the plaintiff's vehicle collided with the rear left portion of the LLV and the plaintiff's vehicle pushed the LLV over the curb.

15. The plaintiff testified that, as he came around the curved ramp into the merge lane:

> I was looking ahead, to the side, and following my boat all at the same time trying to get around that corner. I did have oncoming traffic in the other way, traffic in the merging lane, and myself, and the boat.
>
> Now, I didn't want to get up on the curb with the boat, but I didn't want to run into anybody in the other lane over there because there's not a whole lot of room in that lane, and I looked around, and here's that vehicle. Bang."

Docket Entry No. 35, at 52.

16. The plaintiff explained that he was not "real sure" why he could not see the LLV, but he testified as follows:

> [I]t was raining, and I didn't want to get into that other vehicle, I wanted to come on around and follow my trailer on around. And when I got around to where I could see good, there it [the LLV] was.

Id.

When prompted by counsel who asked if the plaintiff "couldn't see good because of the tree, is that right?" the plaintiff responded "No, sir. I did not see that vehicle until I got almost on top of it." Id.

17. The plaintiff had previously been employed as an over-the-road driver for over 40 years and later was a Lewis County Deputy Sheriff. At the time of the trial, the plaintiff was a court security officer with the Sheriff's Department. The plaintiff had also been self-employed in a repair and handyman business, but he testified that he was no longer able to work in that business after the accident, although he had slowed down his work after his 2008 stroke and before the 2009 accident.

18. Both the plaintiff's truck and the LLV sustained damage as a result of the accident. The plaintiff suffered neck, right arm and shoulder pain, and headaches, as well as a tear to his right bicep and a torn rotator cuff for which he had surgery and post-surgery physical therapy, incurring medical bills in the stipulated amount of $40,064.66. During the six to seven weeks following his surgery, the plaintiff was very limited in his physical ability and his wife had to assist him with bathing. For approximately one year after the accident, the plaintiff remained more limited in his physical activities than before the accident in terms of his ability to perform household chores, mow the yard and play with his adopted child who is also his granddaughter. The plaintiff did not return to his job at the Lewis County Sheriff's Department until January of 2010. He has also had to forego working at his part-time handyman business in which he worked no more than 8-9 hours a week.[1] The plaintiff sought a total of $176,755.72 in damages, the amount sought in his administrative claim.

---

[1] It was not entirely clear from the plaintiff's testimony whether he was working up to 8-9 hours a week before his stroke in 2008, or before the accident in 2009.

# III. CONCLUSIONS OF LAW

The FTCA provides a limited waiver of the sovereign immunity of the United States and permits actions for damages against the United States for injuries caused by the tortious conduct of agents or employees of the United States, acting within the scope of their employment, to the extent that a private person would be liable under the law of the state where the act or omission occurred. See 28 U.S.C. § 1346(b). Accordingly, the law of the State of Tennessee applies to this action. See Richards v. United States, 369 U.S. 1, 10-11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).

### A. Basic Law of Negligence

Under Tennessee law, a negligence claim requires proof of five basic elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of this duty of care; (3) an injury to the plaintiff; (4) actual causation or causation in fact; and (5) proximate or legal causation. See West v. East Tennessee Pioneer Oil Co., 172 S.W.3d 545, 550 (Tenn. 2005); McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995); Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993); Secrest v. Haynes, 2003 WL 22071546, *4 (Tenn.Ct.App. Sept. 8, 2003), citing Rice v. Sabir, 979 S.W.2d 305, 308 (Tenn. 1998).

### B. Applicability of T.C.A. § 55-8-158

The plaintiff maintains that Ms. Boyd violated Tenn. Code Ann. § 55-8-158, which provides in pertinent part that:

> (a) Upon any highway outside of a business or residential district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled part of the highway when it is practicable to stop, park, or so leave the vehicle off such part of the highway, but in every event an unobstructed width of the highway opposite a standing vehicle of not less than eighteen feet (18') shall be left for the free passage of other vehicles, and a clear view of the stopped vehicle shall be available from a distance of two hundred feet (200') in each direction upon such highway.

Tenn. Code Ann. 55-8-158(a).

> (c) Notwithstanding subsection (a), no person shall stop, park, or leave any motor vehicle, whether attended or unattended, upon the paved or unpaved portions of any entrance or exit ramp of any highway . . . .

Tenn. Code Ann. § 55-8-158(c).

To the extent that the defendant continues to contend, as counsel argued at the conclusion of the trial, that the Tennessee Court of Appeals articulated a reasonable postal carrier standard when finding that Tenn. Code Ann. § 55-8-158(c) did not apply in Borden v. Daniel, 346 S.W.2d 283 (Tenn.Ct.App. 1960), the Court disagrees that Borden created such an exception. The Borden Court found that a pedestrian was not a beneficiary of the statute, which was designed to "prevent traffic 'bottle necks' and resulting collision between vehicles." 346 S.W.2d at 317. In that case, the Court determined that the mail carrier was not negligent because he was stopped in broad daylight leaving 15 feet of unobstructed pavement for passage of other vehicles and an "unobstructed view of straight and practically level highway in both directions for a distance of several hundred feet." 346 S.W.2d at 318.

The instant case involves a collision of two vehicles and not an accident involving a pedestrian who was hit by a car attempting to avoid a postal vehicle. The Court concludes that Borden did not create a sweeping exception for mail carriers as the defendant suggested.

However, the Court agrees with the defendant that Tenn. Code Ann. § 55-8-158(a) does not apply because of its introductory language that limits its application to "any highway outside of a business or residential district." The collision occurred in a residential area and this section is inapplicable.

The Court further finds that section 55-8-158(c) is also inapplicable. Although the parties did not specifically address at what point the ramp[2] on Highway 20 ended, considering a ramp used to enter an interstate highway as an analogy, the Court finds that the Highway 20 ramp ended once

---

[2] A ramp is defined, inter alia, as "an inclined roadway connecting two thoroughfares." Websters' Third New International Dictionary (1993). In this case, there was no incline, and both Highway 20 and the roadway merging into the primary northbound lane of Highway 48 were flat.

7

the plaintiff drove onto Highway 48, even though he continued in the merge lane of Highway 48.[3] Ms. Boyd did not park her LLV on the ramp itself but rather in the merge lane, and, as a result, the Court concludes that section 55-8-158(c) does not apply.

### C. Comparative Fault

The Court finds that both parties were negligent and that the conduct of both parties was the proximate cause of the accident.

The defendant was negligent by establishing, maintaining and using the location of Ms. Boyd's dismount in the merge lane when the ramp curved around into the merge lane, detracting from visibility. It is not clear to the Court whether the large magnolia on the property to the right of the ramp contributed to the plaintiff's limited visibility. When the plaintiff was asked if he "couldn't see good because of the tree," he responded, "No sir. I did not see that vehicle until I got almost on top of it." It is not clear from his response whether or not the plaintiff attributed his inability to see the LLV to his vision being blocked by the magnolia tree. However, on cross-examination, defendant's counsel asked the plaintiff to demonstrate where the LLV was and where he first saw the LLV. See Exhibit 1R. The plaintiff marked a "B" where he first saw the LLV, which was past the magnolia tree. Thus, the defendant maintains that the magnolia tree was not a factor in the accident.

Even if the large magnolia tree is not a factor to be considered in this accident, the defendant clearly did not consider other factors, including the curved ramp, the need to merge with and observe

---

[3] In the defendant's proposed findings of fact and conclusions of law, the defendant relates that the "area in which Ms. Boyd parked her postal vehicle was within a ramp used for merging onto Highway 20 . . . ." Docket Entry No. 43, at 2. However, that statement referred to the plaintiff's theory as set out in the parties' joint pretrial order, in which the plaintiff referred to the location of the parked LLV as being "in an area of the roadway of Highway 20," and, somewhat confusingly, "within a ramp used for merging onto Highway 20," see Docket Entry No. 33, at 1, because the merge lane was clearly for merging onto Highway 48, not Highway 20. On the other hand, it appears that the plaintiff agrees that, once the plaintiff was in the merge lane of Highway 48, he was no longer on the ramp. See Plaintiff's Proposed Findings of Fact and Conclusions of Law , in which the plaintiff refers to the "ramp that adjoins Highway 20 West and the merge lane of Highway 48 North . . . ." Docket Entry No. 39, at 3, ¶ 7; Docket Entry No. 39, at 19, ¶ 14.

traffic in the primary northbound lane, and relatively short distance between the ramp and the dismount location.

The plaintiff contends that Ms. Boyd could have parked across the street where there were parallel parking spots or she could have parked in parallel parking spaces approximately 100 yards away, where she would have parked to deliver to the next set of houses on the street. Ms. Boyd testified that she did not select the area to dismount; both the route and the location of dismounts were established for her by the Postmaster. There was no testimony about when the dismount location was selected or what factors were considered in determining that dismount location. However, the Court finds that requiring Ms. Boyd to have crossed the street twice would have put her and others in potentially more danger than the dismount location that she used. On the other hand, the Court finds that Ms. Boyd could have safely used the parking area approximately 100 yards away, even though it would have required her to walk an additional amount.

The Court finds that the plaintiff was also negligent and comparatively at fault. Several factors contributed to the plaintiff's failing to avoid the collision with the LLV. It was raining and overcast, contributing to limited visibility and requiring the plaintiff to take extra precautions when merging into another lane of traffic. The weather conditions may have, in and of themselves, required a rate of speed less than the 15 to 20 miles an hour the plaintiff testified he was driving. When combined with two other salient factors, the circumstances did require both a slower speed and a more vigilant look-out than the plaintiff was able to give. The first of these factors was the fact that the plaintiff was pulling a 17 foot boot, which required special attention. Specifically, the plaintiff testified that he was "following [his] boat all at the same time around that corner" to ensure that he did not "get up on the curb with the boat." Docket Entry No. 35, at 52. A second exacerbating factor was the plaintiff's poor vision in his left eye, which would have required him to turn his head further to his left side so that he could see with his right eye to track his boat as it came around the corner and observe traffic in the primary northbound lane. With those distractions,

coupled with the low visibility, both as a result of the rain and overcast sky and the plaintiff's limited vision, the plaintiff simply was not concentrating on the traffic in the merge lane ahead of him.

The Court does not find that, because of the limited vision in his left eye, it was negligent for the plaintiff to be driving at all. Instead the Court finds that, with his limited vision, when he drove pulling his boat in the rain while he was attempting to merge into traffic, he was negligent in not slowing down and not keeping a better lookout for what was directly in front of him.

Taking into account all of the circumstances surrounding the accident in this case and in accord with McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992), the Court finds that the fault attributable to the plaintiff was at least fifty percent (50%), precluding any recovery by the plaintiff.

An appropriate order will enter.

_____
JULIET GRIFFIN
United States Magistrate Judge